The NESTLE COMPANY, INC., Plaintiff-Appellant,

v.

CHESTER'S MARKET, INC. and Saccone's Toll House, Inc., Defendants-Appellees.

Docket No. 83–7753.

United States Court of Appeals, Second Circuit.

Argued Jan. 22, 1985.

Decided March 5, 1985.

Allen F. Maulsby, New York City, for plaintiff-appellant; Cravath, Swaine & Moore, New York City, of counsel.

Barry H. Garfinkel, New York City, for defendants-appellees; Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel.

Before VAN GRAAFEILAND, MESKILL and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff-appellant The Nestle Company, Inc. ("Nestle") and defendants-appellees Chester's Market, Inc. and Saccone's Toll House, Inc. (collectively "Saccone") jointly seek vacatur of a partial judgment of the district court invalidating the Nestle trademark "Toll House" as used in connection with cookies. The parties seek this relief as part of a settlement they have reached.

For the reasons discussed *infra,* we remand to the district court with instructions to vacate the partial judgment and dismiss the action and counterclaims.

### BACKGROUND

Nestle owns five trademarks for Toll House covering various products. Saccone uses Toll House in its corporate name, in the name of an inn it operates, and in connection with cookies. Nestle brought suit against Saccone in May, 1982 for trademark infringement and unfair competition with regard to cookie use. Saccone asserted counterclaims and affirmative defenses. On August 23, 1983, the district court granted partial summary judgment to Saccone, 571 F.Supp. 763 (D.Conn.1983), holding that the term "Toll House" was generic and therefore could not be a trademark under 15 U.S.C. § 1064(c) (1982).

While Nestle's appeal from the partial judgment was pending, the parties negotiated, with the aid of this court's staff counsel, a settlement resolving both the trademark infringement claim and all pending claims and counterclaims. Nestle desired, however, to continue to defend the Toll House trademark and understandably feared that the existence of the Connecticut judgment would operate as collateral estoppel in future litigation. Thus, the parties jointly suggested to Judge Blumenfeld that he vacate his judgment and enter a consent judgment effectuating the settlement. Judge Blumenfeld advised the parties that he lacked jurisdiction to take such action while Nestle's appeal was pending.

The parties thereupon moved this court to vacate the district court's judgment and enter a judgment on consent. Believing it best to permit the district court to consider the motion in the first instance, Judge Newman, with the consent of both parties, remanded the case to the district court without prejudice to the parties' right to reinstate the appeal on the merits or to bring an identical motion in this court should the district court decline to enter the consent judgment.

On November 5, 1984, the district court denied the joint motion. 596 F.Supp. 1445 (D.Conn.1984). Finding that the case was not moot and construing the motion as one for relief from the judgment pursuant to Fed.R.Civ.P. 60(b), the court concluded that such relief is discretionary, and that the interest in finality of judgments and the public interest in adjudicating trademark validity outweighed the parties' interest in their settlement. On November 6, 1984, pursuant to 15 U.S.C. § 1119 (1982), Judge Blumenfeld directed the clerk of the district court to notify the U.S. Commissioner for Patents and Trademarks that Nestle's trademark was invalid. The parties have now moved this court, in accord with the terms of the remand, to vacate the district court's judgment and dismiss the pending appeal as moot.

### DISCUSSION

■ The parties contend that their settlement effectively moots this appeal and that the judgment of the district court must therefore be vacated under *United States v. Munsingwear, Inc.,* 340 U.S. 36, 41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950). Both this court[1] and other courts of appeals[2] have generally followed the rule that district court judgments that become moot pending appeal must be vacated. However, this rule is inapplicable in the present case because it is not moot.

Nestle insists on vacatur of the district court's judgment as a condition of settlement so that the judgment will not automatically prevent it through the operation of collateral estoppel from enforcing the trademark in the future. Should we vacate the judgment, the settlement agreement by its terms will take automatic effect.

---

1. *See, e.g., Jefferson v. Abrams,* 747 F.2d 94 (2d Cir.1984); *Division 580, Amalgamated Transit Union v. Central New York Regional Transportation Authority,* 578 F.2d 29 (2d Cir.1978).

2. *See, e.g., Kinzenbaw v. Deere & Co.,* 741 F.2d 383 (Fed.Cir.1984); *Aviation Enterprises v. Orr,* 716 F.2d 1403 (D.C.Cir.1983); *Delta Air Lines v. McCoy Restaurants, Inc.,* 708 F.2d 582, 584 (11th Cir.1983).

Should we decline to vacate it, Nestle will pursue its appeal. This very recital, however, makes it clear that the case is not moot in the conventional sense. The presence of a live controversy is amply demonstrated by Nestle's insistence on a vacatur prior to settlement so as to preserve its right to pursue an appeal should the judgment remain in effect. In *Munsingwear*, vacatur of the district court's judgment was the consequence of the case's mootness. In the instant case, mootness would be the consequence of the vacatur. We conclude, therefore, the action is not moot.

■ After reaching a similar conclusion, the district court treated the parties' joint motion as a request for relief from a judgment under Fed.R.Civ.P. 60(b). Because a party may bring a timely appeal from the denial of a Rule 60(b) motion which does not bring up the underlying judgment for review, *Browder v. Director, Department of Corrections*, 434 U.S. 257, 263 & n. 7, 98 S.Ct. 556, 560 & n. 7, 54 L.Ed.2d 521 (1978), we treat this motion as an appeal from Judge Blumenfeld's denial of the motion. Our inquiry, therefore, is limited to whether the district court abused its discretion, *id.*, in subordinating the parties' interests to what it considered to be the public interest in the finality of judgments and in the adjudication of trademark validity.

We believe Judge Blumenfeld's concern over the finality of judgments to be misplaced in the circumstances of the present case. For the same reasons that the case is not moot, the judgment here is subject to reversal on appeal. We are thus not faced with new litigation which seeks to avoid directly or indirectly an otherwise final judgment, such as a collateral attack or a claim that a judgment previously entered in litigation between the parties over the same subject matter is not preclusive. To the contrary, here we are faced with a settlement that will bring pending litigation to an end. Because the policies favoring finality of judgments are intended to conserve judicial and private resources, the denial of the motion for vacatur is counter-productive because it will lead to more rather than less litigation.

Moreover, even assuming that concerns about the finality of judgments are legitimately implicated, decisions of the Supreme Court strongly suggest that those concerns yield to other interests in circumstances closely analogous to the present one. *Munsingwear* stated that when a case becomes moot pending appellate review "through happenstance," the appellate court should dismiss the appeal, vacate the district court judgment, and remand with instructions to dismiss. *Munsingwear*, 340 U.S. at 39–40, 71 S.Ct. at 106–107. Such a procedure clearly undermines the finality of district court judgments, even though the judgments are adjudications on the merits of what were at the time live controversies. To be sure, the instant case is not moot, but the *Munsingwear* rule is instructive because of the balance it strikes against the finality of judgments.

Moreover, the Supreme Court has summarily vacated judgments in cases settled while pending on appeal after a court of appeals has refused to do so. In *New Left Education Project v. Board of Regents*, 472 F.2d 218 (5th Cir.), *vacated*, 414 U.S. 807, 94 S.Ct. 118, 38 L.Ed.2d 43 (1973), the district court held unconstitutional certain rules promulgated by the regents of a state university system. While the case was on appeal, the regents repealed those rules and then argued that the case was moot under *Munsingwear*. The plaintiffs sought, however, to preserve the declaratory portion of the judgment. The court of appeals dismissed the appeal and remanded the injunctive portions of the judgment for reconsideration of vacatur, but allowed the declaratory portion to stand. It reasoned that the case was not moot through "happenstance" and that *Munsingwear* was therefore inapplicable. Following a petition for certiorari, the Supreme Court summarily vacated the entire judgment and remanded with instructions to dismiss the complaint. *Accord, Security Bancorp v. Board of Governors of the Federal Reserve System*, 655 F.2d 164 (9th Cir.1980),

*vacated,* 454 U.S. 1118, 102 S.Ct. 962, 71 L.Ed.2d 105 (1981).

So far as we can determine, the practice in our circuit has been to vacate district court judgments when a settlement moots the controversy. *See Amalgamated Clothing and Textile Workers Union v. J.P. Stevens & Co.,* 638 F.2d 7 (2d Cir.1980) (per curiam).[3] It is instructive to note that where the parties have not reached a settlement and where vacatur of a district court's judgment on mootness grounds might deprive a party of protection it had fairly won, we have not directed vacatur. In *Cover v. Schwartz,* 133 F.2d 541 (2d Cir.1942), *cert. denied,* 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1943), a patent infringement action, the district court had held the patent invalid and had opined by way of dictum that it was also not infringed, the judgment embodying only the ruling on invalidity. On appeal, the plaintiff abandoned the claim of infringement, but sought reversal of the judgment declaring the patent invalid. Because appellant no longer sought any sort of recovery from the appellee, we dismissed the appeal as moot but left the district court judgment in effect. Because there was no settlement in *Cover* and no actual decision with regard to non-infringement, vacatur by the unilateral action of the plaintiff might have returned the parties to their pre-litigation positions, and, as we noted, have exposed the defendant to "other vexatious actions by appellant."[4] *Id.* at 547. *Cover* must be read in light of the Supreme Court's subsequent summary action in *New Left Education Center, supra,* that vacated a judgment when the plaintiff sought to preserve it for its declaratory effect, the defendant having taken actions that mooted the plaintiff's claims for relief. *Cover,* therefore, now stands at best for the proposition that a plaintiff who has lost in the district court may not void an adverse judgment by unilaterally abandoning claims for relief and thereby leave the defendant vulnerable to renewed litigation. Where both parties agree on a vacatur after a comprehensive settlement, *Cover* is inapplicable.

Finally, we note that our position on the importance of honoring settlements over the finality of trial court judgments finds support among commentators. As 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533.10 at 432 (2d ed. 1984), argues,

> [a]ll of the policies that make voluntary settlement so important a means of concluding litigation apply. The appellee as well as the appellant may prefer settlement, and can bargain for whatever future protection it needs. It cannot be argued that the possible nonmutual preclusion interests of nonparties justify either appellate decision against the wishes of the parties, or an insistence that as a price of settlement the appellant must permit the district court judgment to support nonmutual preclusion. The parties should remain free to settle on terms that require vacation of the judgment, entry of a new consent judgment, or such other action as fits their needs. (footnote omitted)

The district court's other reason for declining to vacate was the public interest in

**3.** *See also Kinzenbaw v. Deere & Co.,* 741 F.2d 383 (Fed.Cir.1984); *Aviation Enterprises v. Orr,* 716 F.2d 1403 (D.C.Cir.1983); *Delta Air Lines v. McCoy Restaurants, Inc.,* 708 F.2d 582, 584 (11th Cir.1983); *Douglas v. Donovan,* 704 F.2d 1276 (D.C.Cir.1983).

**4.** In *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720 (9th Cir.1982), the parties settled while an appeal was pending, and neither party objected to vacatur. The Ninth Circuit held, however, that the *Munsingwear* rule did not extend to cases mooted by the parties' actions and, citing *Cover v. Schwartz,* stated

> [w]e find the distinction between litigants who are and are not responsible for rendering their case moot at the appellate level persuasive. If the effect of post-judgment settlements were automatically to vacate the trial court's judgment, any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books.

*Id.* at 721. This is a misreading of our decision in *Cover* which, as noted in the text, is not applicable where both parties desire a vacatur as part of a settlement.

adjudicating the validity of trademarks. However, the district court imposed the heavy burden on trademark defendants of having to continue to litigate when they would prefer to settle, a ruling without precedent. The district court's opinion was at pains to describe the plight of hypothetical future defendants facing hypothetical future lawsuits brought by Nestle over use of the Toll House trademark. It failed to mention, however, the plight of the real trademark defendants involved in the reality of the present litigation. Should we refuse to vacate the judgment, the appellees will be forced to bear the costs and risks of further litigation, including the non-trivial risk of a reversal on the merits. Drumbeating about the need to protect other unknown users of the trademark Toll House will ring hollow indeed in the ears of the present defendants if the peril of a reversal is realized. Even success on the appeal, moreover, will be only at the price of further legal fees. We see no justification to force these defendants, who wish only to settle the present litigation, to act as unwilling private attorneys general and to bear the various costs and risks of litigation. We note, moreover, that the threat of baseless and oppressive litigation by trademark holders was considerably overstated by the district court in light of remedies provided by the antitrust laws against those who resort to baseless or repetitive legal proceedings for the purpose of restraining competition. *California Motor Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *Litton Systems v. AT & T,* 700 F.2d 785 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984); *Landmarks Holding Corp. v. Bermant,* 664 F.2d 891 (2d Cir.1981).

We therefore hold that the district court abused its discretion by refusing to grant the joint 60(b) motion. We reverse the order denying the motion under Rule 60(b) and remand with instructions to vacate the judgment and dismiss the complaint and counterclaims.