**FEDERAL DATA CORPORATION, Appellant,**

v.

**SMS DATA PRODUCTS GROUP, INC., Appellee.**

**Appeal Nos. 87–1247, 87–1248.**

United States Court of Appeals, Federal Circuit.

Decided April 21, 1987.

Unpublished Order Issued April 22, 1987.

Published Order Issued May 19, 1987.

---

Robert E. Lieblich, Spriggs, Bode & Hollingsworth, Washington, D.C., for appellant.

Forrest A. Hainline, III, Swidler & Berlin, Washington, D.C., for appellee SMS Data Corp.

Eric Miller, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for the U.S.

Before DAVIS, SMITH and NIES, Circuit Judges.

## ORDER

DAVIS, Circuit Judge.

Appellant Federal Data Corporation (FDC) and appellee SMS Data Products Group, Inc. (SMS) jointly move for voluntary dismissal of their appeal and cross-appeal filed on February 27, 1987 and request that the court direct the General Services Board of Contract Appeals (Board) to dismiss SMS's protest in accordance with the parties' January 20, 1987 settlement agreement. The Environmental Protection Agency (EPA), respondent before the Board and party to the settlement agreement, supports the joint motion for dismissal. Systems Management American Corporation (SMAC) moves to intervene or, in the alternative, to appear as *amicus curiae*. FDC and SMS vigorously oppose intervention or appearance as *amicus*. SMAC, which was directed by the court to respond to the joint motion, opposes the motion for voluntary dismissal.

## BACKGROUND

On July 8, 1986, SMS filed a protest with the Board protesting the contract awarded by EPA to FDC. The Board on December 3, 1986, issued a decision prohibiting further performance of the contract by FDC, but also refusing to direct EPA to award the contract to SMS. FDC and SMS appealed and cross-appealed from the Board's decision. Shortly thereafter, SMS and EPA entered into a settlement agreement whereby EPA agreed to pay SMS a certain amount of money and SMS agreed to withdraw its appeal. FDC and SMS both moved this court to dismiss their appeals without prejudice, and on January 20, 1987, this court so dismissed.

Subsequent to the voluntary dismissal of the appeal and cross-appeal, FDC, SMS and EPA jointly moved the Board for an order dismissing SMS's protest. Because the Board had not acted on the motion, FDC and SMS re-noticed (on February 27, 1987) their appeals to the court and then promptly moved for voluntary dismissal based on the settlement agreement and conditioned upon the court directing the Board to dismiss SMS's protest.

On March 2, 1987, the Board, in a two-to-one decision, denied the joint motion to dismiss:

The policy which strongly favors the settlement of cases so as to put an end to litigation does not require a tribunal to accept a settlement agreement when vacatur is not equitable and would contravene other important public policy consid-

erations. This settlement agreement prompts us to exercise discretion. A balancing of the interests compels us to leave in place the decision of December 3, 1986, with the relief therein set forth. Were we to agree to the motion, we would authorize the EPA to continue with its improperly awarded contract while paying the nominally prevailing protester a substantial sum out of United States Government funds. To permit such actions would turn the Brooks Act procurement and protest process on its head and would disregard specific congressional intent to protect the public interest by preventing agencies from running slipshod over statutes and regulations.

March 2, 1987 Board Opinion at 2. The Board also allowed SMAC to appear as *amicus curiae.* SMAC was an unsuccessful offeror on the protested contract who did not seek to protest or to intervene in the Board's proceeding within the Board's established time limits. SMAC sought to intervene in the Board's proceeding after the Board's final decision and while an appeal to this court was pending. SMAC is the only party who opposed the joint motion before the Board.

ANALYSIS

The issue of whether the Board correctly decided not to vacate its December 3 decision comes before us in an unusual procedural posture. We are being asked to decide this issue, not in the usual course of an appeal, but by way of a joint motion for voluntary dismissal conditioned upon directing the Board to vacate its December 3, 1986 decision. Nonetheless, this motion acts (and we treat it) as an informal appeal from the Board's March 2 denial and the briefs have focused on that issue. Our current inquiry, therefore, is directed to whether the Board abused its discretion in subordinating the parties' interests and the public interest in settlement to what the Board considers to be overriding public policy considerations. If we determine that the Board has abused its discretion, then we should grant the joint motion for voluntary dismissal.

The dissent from the Board's decision relied on *Nestle Company v. Chester's Market, Inc.,* 756 F.2d 280 (2d Cir.1985), *rev'g,* 596 F.Supp. 1445 (D.Conn.1984), a case which is remarkably similar to the case here. In *Nestle,* the court of appeals found that the district court had abused its discretion in refusing to grant a joint Rule 60(b) motion for relief from judgment after all the parties had reached a settlement. The district court had performed a balancing test and determined that the public interest was greater than the parties' interest. The appellate court noted the heavy burden on the parties of having to continue to litigate when they would prefer to settle as "without precedent." *Nestle,* 756 F.2d at 284. Further, the court emphasized that the district court should not force unwilling parties to act as private attorneys general and to bear the various costs and risks of litigation. *Id.*

It is long established that courts favor dispute resolution through voluntary settlements. *See Williams v. First National Bank of Pauls Valley,* 216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625 (1910); *Cheyenne River Sioux Tribe v. United States,* 806 F.2d 1046 (Fed.Cir.1986); *Bergh v. Department of Transportation, FAA,* 794 F.2d 1575 (Fed.Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986). In *United States v. Munsingwear,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950), the Supreme Court stated that:

> The established practice of the court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.

Here, all of the parties to the protest proceeding before the Board have agreed to settle their differences. SMAC forfeited its right to veto or impede the settlement when it elected not to protest or to intervene as of right after the SMS protest was filed. The reasoning in *Nestle* is persuasive. Like the court in *Nestle,* we see no reason to force the parties here to continue the litigation. Had the Board not

allowed SMAC to intervene at the eleventh hour in contravention of its own rules, it would have had no voice protesting the settlement. When the parties have settled their differences, then the appropriate course of action is for the appellate court to dismiss the action and to vacate the judgment below. See *Munsingwear, supra; Nestle, supra; Aviation Enterprises, Inc. v. Orr,* 716 F.2d 1403 (D.C.Cir.1983); *Swingline, Inc. v. I.B. Kleinert Rubber Company,* 399 F.2d 283 (CCPA 1968). In this instance, to require the parties who have settled their differences to continue to litigate (including further proceedings in this court) is unjust not only to the parties, but is wasteful of the resources of the judiciary.

CONCLUSION

We conclude that the Board abused its discretion in not dismissing its December 3, 1986 decision in light of the settlement reached by the parties

Accordingly,

IT IS ORDERED THAT:

(1) The joint motion for voluntary dismissal is granted.

(2) The Board is directed to dismiss SMS's protest and vacate the decision in accordance with the settlement agreement.

(3) SMAC's motion to intervene or appear as *amicus curiae* is denied.